IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CARLOS JOSE TREJO RUIZ,** | * | |
| Petitioner, | * | |
| v. | * | Criminal No. RWT-10-0472 |
| | * | Civil No. RWT-15-1143 |
| **UNITED STATES OF AMERICA,** | * | |
| Respondent. | * | |

## MEMORANDUM OPINION

On August 4, 2010, Petitioner Carlos Jose Trejo Ruiz was indicted along with eight other defendants and charged with a single count of conspiracy to distribute cocaine and cocaine base, ECF No. 1. A Superseding Indictment was returned on December 22, 2010, ECF No. 145, that added additional counts not involving Trejo Ruiz, who remained named as a defendant only in Count One charging conspiracy. Less than six weeks before the scheduled trial,[1] a Second Superseding Indictment was returned that, for the first time since the inception of the case, added four additional charges against Trejo Ruiz. A new Count Four charged him with possession of a machinegun during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924 (c) (1) (B) (ii), an offense that carries a mandatory minimum consecutive sentence of thirty years. ECF No. 335. After a five-day trial beginning on June 26, 2012, the jury returned a verdict finding Trejo Ruiz guilty on all counts. ECF No. 364.

Trejo Ruiz has now filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence based on ineffective assistance of counsel. ECF No. 509. He alleges unreasonable

---

[1] The Court is troubled by the timing of the eleventh hour Second Superseding Indictment that included a machinegun count not brought against any other defendant, including the undisputed ringleader. It certainly has the appearance, if not the reality, of punishing the defendant for having elected to go to trial, and the resultant conviction and mandatory sentence shattered any notion of this defendant's sentence being sufficient, but not greater than necessary, to comply with the purposes of sentencing under federal law. 18 U.S.C. § 3553 (a) (2).

performance due to his attorney's failure to request a jury instruction that conviction under the machinegun count required proof of *mens rea*, i.e., proof that he knew that the weapon was a machinegun. ECF No. 509, at 1. He alleges that he was prejudiced by the unreasonable performance because a reasonable juror, properly instructed, would have been unlikely to convict him of the machinegun charge. For the reasons that follow, the Court agrees with Trejo Ruiz and will vacate his conviction and sentence on the machinegun charge.

## BACKGROUND & PROCEDURAL HISTORY

Between July 2009 and August 2010, Trejo Ruiz, a first-time, non-violent offender, participated in a drug trafficking ring led by Nestor Vladamir Sandoval-Roca. After being found guilty on all counts at the conclusion of his five-day jury trial,[2] Trejo Ruiz appeared for sentencing on November 8, 2012. He was initially sentenced to a 360-month term of imprisonment with all sentences to run concurrently, followed by five years of supervised release.[3] ECF No. 448, at 2–3. On November 20, 2012, after a motion by the Government questioning the legality of concurrent sentences, this Court amended the sentence for the machinegun charge to run consecutively, thereby increasing Trejo Ruiz's term of imprisonment to 480 months.[4] ECF No. 440; ECF No. 450, at 2. Thus, Trejo Ruiz, a minor participant in the drug conspiracy, was sentenced to a term of imprisonment far greater than that of all of his co-conspirators—including the undisputed ringleader, Sandoval-Roca, who received only 210 months. Trejo Ruiz's other co-conspirators received sentences of thirteen, twenty-three,

---

[2] Trejo Ruiz claims that the Government initially offered him a plea agreement of "46–57 months, not including cooperation credit." ECF No. 509, at 5. Trejo Ruiz's counsel asserts that witness intimidation while in prison, diminishing mental health, and a growing distrust of the Government led Trejo Ruiz to ultimately reject that plea agreement. *Id.* at 5–8. These factors also led to the transition of defense counsel from John McKenna to Anthony Martin. *Id.*

[3] The Court initially sentenced Trejo Ruiz to 210 months for the drug counts (counts 1 and 5), 60 months for the interstate travel counts (counts 2 and 3), and 360 months for the machinegun count (count 4)—all to run concurrently for a total of 360 months. ECF No. 448, at 2.

[4] The Court's final sentence was 120 months for the drug counts, 60 months for the interstate travel counts to run concurrently, and 360 months for the machinegun count to run consecutively. ECF No. 450, at 2. Supervised release remained the same. *Id.* at 3.

twenty-four, thirty, forty-six, and fifty-seven months. All told, Trejo Ruiz received a sentence that was greater than all his co-conspirators' sentences combined.

The Fourth Circuit affirmed this Court's verdict and sentence on January 10, 2014, and the Supreme Court denied certiorari on April 21, 2014. ECF No. 487-2; *Trejo-Ruiz v. United States*, 134 S. Ct. 1902 (2014). On April 21, 2015, Trejo Ruiz filed a timely motion pursuant to § 2255 seeking to set aside, correct, or vacate his sentence. ECF No. 509. The Government responded in opposition on June 8, 2015, ECF No. 514, and Trejo Ruiz filed a reply in support of his motion on June 29, 2015, ECF No. 515.

The central dispute in this case concerns Trejo Ruiz's sale or transfer of a machinegun to Sandoval-Roca. ECF No. 509, at 1. Trejo Ruiz maintains that he never knew that the weapon was capable of automatic firing, and that his counsel's failure to request a jury instruction on the *mens rea* requirement of the machinegun charge constituted unreasonable and prejudicial error. *Id.* at 2, 18.

## STANDARD OF REVIEW

Under § 2255, a petitioner must prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255; *see Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). The claim must have a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demand of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).

## ANALYSIS

Trejo Ruiz asserts ineffective assistance of counsel based on the failure of his attorney to request an instruction that in order to convict, the jury must find beyond a reasonable doubt that

he knew that the firearm he possessed was a machinegun. ECF No. 509, at 1. As a result, Trejo Ruiz argues that a key element of the crime was not proven beyond a reasonable doubt, a notion that Trejo Ruiz's then defense counsel, Anthony Martin, concedes both now and on appeal was a critical error. *See* ECF No. 509-1.

In its response, the Government first contends that a *mens rea* element is not required to prove a violation of § 924 (c) (1) (B) (ii). ECF No. 514, at 9–11. Second, the Government contends that any potential *mens rea* requirement under § 924 (c) (1) (B) (ii) results from a statutory construction argument for which precedent did not exist at the time of the trial. *Id.* at 5–9. As a result, the Government argues that the Court cannot find defense counsel's performance deficient and that Trejo Ruiz cannot demonstrate prejudice. *Id*. Third, the Government points to the same evidence that Trejo Ruiz presents (witness testimony and the weapon's physical characteristics) and avers that "in the light most favorable to the Government," a jury could have reasonably concluded that Trejo Ruiz knew that the firearm was a machinegun.[5] *Id.* at 12–13.

Courts examine claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the performance prong, a petitioner must show that counsel's performance was deficient. *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689; *see also United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). The alleged deficient performance must be objectively unreasonable and "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The Court must evaluate the conduct at issue from counsel's perspective at the

---

[5] This last argument is the Government's least compelling. Although the evidence may prove that Trejo Ruiz knowingly possessed a gun, it does not clearly demonstrate that Trejo Ruiz knew the weapon could fire automatically. *See infra* Section II.

time, and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Under the prejudice prong, a petitioner must show that the deficient performance prejudiced the defense, and but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 687, 694. Unless a petitioner makes both showings, the Court cannot find that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* at 696.

If there is not a *mens rea* requirement under § 924 (c) (1) (B) (ii), then the analysis does not need to go any further because counsel's performance was not objectively unreasonable. If this Court does find the existence of a *mens rea* requirement, then the Court must determine whether Trejo Ruiz was prejudiced as a result.

I.  **Trejo Ruiz Satisfies *Strickland's* Unreasonable Performance Prong**

Trejo Ruiz must first establish that his counsel's conduct falls outside the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. He argues that an implied *mens rea* element must be proven in order to convict under § 924 (c) (1) (B) (ii), and that his counsel unreasonably neglected to challenge the jury instruction omitting it. ECF No. 509, at 1.

   A.  **Counsel's Failure to Request a Jury Instruction on the *Mens Rea* Element Was Not a Matter of Trial Strategy**

As an initial matter, an objectively unreasonable performance cannot be demonstrated by simply second guessing defense counsel's strategy. *Strickland*, 466 U.S. at 689. Through Martin's affidavit,[6] Trejo Ruiz directly refutes any contention that the failure to request a *mens rea* instruction was a strategic decision. ECF No. 509-1. Martin confirms that Trejo Ruiz stated

---

[6] The Court commends Mr. Martin for his candor in conceding his mistake. He is a distinguished, highly respected member of the bar of this Court and his error in not asking for a *mens rea* instruction may very well have been the result of the Government's decision to add a machinegun count at the eleventh hour. Had the count been in the Indictment from the outset, counsel would have had considerably more time to focus on legal requirements for the charge.

5

prior to trial that "[he] never knew the rifle he transferred was a machinegun." *Id.* at 1. Martin states that there was "no strategic reason" for failing to challenge the jury instruction, and that the omission was a "mistake" and an "oversight based on failure to research the issue before trial." *Id.* at 2. Since *Strickland* requires courts to evaluate conduct from counsel's perspective, Martin's admission is dispositive as to whether the failure to request a *mens rea* instruction was a strategic decision. *See Strickland*, 466 U.S. at 689. As Trejo Ruiz cogently points out, "just as courts defer to a defense attorney's explanation as to why his performance was reasonable, this Court should defer to Trejo Ruiz's attorney's explanation that his failure to object was not motivated by precedent or trial strategy." ECF No. 515, at 2.

**B.     There is a *Mens Rea* Requirement Under  § 924 (c) (1) (B) (ii)**

Title 18 § 924 (c) (1) (B) (ii) of the United States Code provides that a person convicted of violating the subsection is subject to a minimum sentence of thirty years if during the course of the violation the individual used a machinegun. In the same chapter, § 921 (a) (23) states that the term "machinegun" has the "meaning given such term in section 5845 (b) of the National Firearms Act (26 U.S.C. 5845 (b))." That section, in turn, defines a machinegun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."

In *United States v. O'Brien*, 560 U.S. 218 (2010), the Supreme Court held that in a prosecution under 18 U.S.C. § 924 (c) (1) (B) (ii), proof that the weapon is a machinegun is an element of the offense, not a mere sentencing enhancement, and must be proved beyond a reasonable doubt, thus implicitly overruling earlier circuit precedent to the contrary, which are discussed *infra*. While *O'Brien* did not address whether a *mens rea* requirement applied in a prosecution under 18 U.S.C. § 924 (c) (1) (B) (ii), certain long-standing principles help supply the answer.

6

Criminal offenses generally include a *mens rea* element unless the crime is subject to strict liability[7] for a mere violation.[8]  "The existence of a *mens rea* is the rule of, rather than the exception to, Anglo-American jurisprudence."  *United States v. United States Gypsum Co.*, 438 U.S. 422, 436 (1978) (quoting *Dennis v. United States*, 341 U.S. 494, 500 (1951)).  In *Staples v. United States*, 511 U.S. 600, 619 (1994), the Supreme Court applied this basic rule in finding that a *mens rea* requirement applies in a prosecution for an automatic weapon offense under 26 U.S.C. § 5861 (d), holding that the Government is "required to prove that petitioner knew of the features" of his firearm "that brought it within the scope of the Act."  The Supreme Court reasoned that "if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect."  *Staples*, 511 U.S. at 620.  These principles are embraced in the Fourth Circuit.  *See United States v. Tomlinson*, 67 F.3d 508, 513 (4th Cir. 1995) (holding that *Staples* requires that when a conviction turns on "possession of a particular type of firearm" the Government must prove that a defendant knew of a firearm's "particular nature"); *United States v. Forbes*, 64 F.3d 928, 932 (4th Cir. 1995) (reasoning that "the concept of *mens rea* is so 'firmly embedded' in 'the background rules of the common law,' that it is not at all surprising that Congress might include it in one statute and inadvertently omit it in the next" (quoting *Staples*, 511 U.S. at 605)); *United States v. Langley*, 62 F.3d 602, 607 (4th Cir. 1995) (en banc)  ("[A] *mens rea* requirement [will not be extended] to a defendant's felony status or . . . to an interstate nexus element" for different offenses under § 924 (c) (1), but

---

[7] A strict liability crime is "[a]n offense for which the action alone is enough to warrant a conviction, with no need to prove a mental state; specif[ically] a crime that does not require a *mens rea* element, such as traffic offenses . . . ." Crime, Strict-Liability Crime, *Black's Law Dictionary* (10th ed. 2014).

[8] A mere violation is any general welfare offense with "no other sentence than a fine or . . . forfeiture" and does not include the moral condemnation of the community.  *See* Model Penal Code § 1.04 (5).

7

these violations differed from "ordinary citizens . . . possessing a firearm unaware of its automatic firing capability as in *Staples*.").

Sections 5861 (d) and § 924 (c) (1) (B) (ii) both deal with automatic weapons and they share a common definition of a machinegun. For a conviction under either statute, the Government must prove beyond a reasonable doubt, as an element of the offense, that the firearm is, in fact, a machinegun. *See United States v. O'Brien*, 560 U.S. at 235 (holding that "the machinegun provision in § 924 (c) (1) (B) (ii) is an element of [the] offense"). While the Supreme Court has explicitly held *mens rea* must be proven under § 5861 (d), it has not specifically ruled that the same requirement applies under the comparable language of § 924 (c) (1) (B) (ii). However, it does not require a leap of faith to conclude that both statutes, which deal with the same subject matter and expressly share the same definition of "machinegun," should be construed harmoniously. Accordingly, the Court concludes that in a prosecution under § 924 (c) (1) (B) (ii), proof of *mens rea* is required, and this Court should have so instructed the jury.

### C. Counsel's Performance was Unreasonable

Deficiency of counsel's performance must be determined from the attorney's perspective and at the time of the proceedings. *Strickland*, 466 U.S. at 689. The Government claims that neither Supreme Court nor Fourth Circuit precedent existed in favor of Trejo Ruiz's position at the time of his case, and argues that the Court therefore cannot find counsel's performance deficient for failure to object to the jury instructions, citing, among others, *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995) (holding that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law).

The Government is simply wrong. *O'Brien* and *Staples* were both decided before Trejo Ruiz was tried, and these cases, together with bedrock principles of Anglo-American

8

jurisprudence, strongly support the existence of a *mens rea* requirement. These are certainly not new rules of law, and they are not contrary to Fourth Circuit precedent. Indeed, they are consistent with precedent in this circuit, including *Tomlinson*. The Government's argument would only apply when *contrary* precedent exists, not when a lack of precedent exists. *See* ECF No. 515, at 5–9 (rebutting many of the cases cited by the Government, including *Kornahrens*, for having existing contrary precedent).

While the Government is correct in arguing that counsel cannot be faulted for making an argument that is contrary to existing precedent, that is not what happened here. Contrary precedent does exist now, but it is not in the Fourth Circuit and it was not in existence at the time of the trial in this case.[9] Counsel's failure to request an instruction cannot be excused because he failed to be a clairvoyant and anticipate future adverse precedents. *See United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999) (noting that "to justify the failure to raise an issue during trial and direct appeal based on a subsequent change in the law, the state of the law must have been such that the legal basis for the claim was not reasonably available when the matter should have been raised"). Here, the legal basis for the claim was reasonably available and no clairvoyance was necessary. Moreover, the post-trial precedents relied upon by the Government are distinguishable, and their logic is contrary to the rationale expressed by the Fourth Circuit in *Tomlinson* and other cases.

---

[9] The Government's assertion that *Burwell* and *Haile* were existing precedent at the time of defendant's trial, ECF No. 514, at 8, 8 n.1, ignores hornbook principles of appellate law. *United States v. Burwell* (*Burwell I*), 642 F.3d 1062 (D.C. 2011), was vacated when the court granted rehearing en banc on October 12, 2011. Order, *United States v. Burwell*, No. 06-3070, Document #1334899 (D.C. Cir. October 12, 2011). The opinion was not reinstated until *United States v. Burwell* (*Burwell II*), 690 F.3d 500 (D.C. Cir. 2012), which was not issued until August 3, 2012. Thus, at the time of trial, June 26, 2012 to July 2, 2012, *Burwell I* was not law and *Burwell II* had not been decided. Indeed, counsel would have had good reason to assume *Burwell I* was vulnerable to attack because the en banc request was granted. *Haile* was issued on June 29, 2012—the middle of Trejo Ruiz's trial—and the 11th Circuit's mandate did not take effect until September 5, 2012 because Haile requested a rehearing. *See* Docket, *United States v. Haile*, 10-15965 (D.C. Cir.). Therefore, even if Trejo Ruiz's attorney is to be expected to finish a day of trial and then research out-of-circuit case law, the *Haile* opinion was not entered as a judgment until September 5, 2012.

In *United States v. Burwell*, 690 F.3d 500, 516 (D.C. Cir. 2012), a sharply divided en banc District of Columbia Circuit declined to recognize a *mens rea* element in § 924 (c) (1) (B) (ii). The defendant in *Burwell* was a member of "a crew of bank robbers that engaged in a violent crime spree across the D.C. Metro area [and who] employed decidedly old-school tactics, including subduing bystanders by brandishing AK-47s, pistol whipping a victim, and spraying a pursuing police car with bullets." *Id.* at 502. These dramatically different facts led the D.C. Circuit to conclude that the difference in mental state and moral depravity between the use of a semi-automatic and an automatic weapon in the furtherance of the crime was insignificant. *See id.* at 509–10. Additionally, not only was the decision based on fundamentally different facts, but also the decision was largely driven by the reluctance to overturn a longstanding District of Columbia precedent, *United States v. Harris*, 959 F.2d 246 (D.C. Cir. 1992). *See Burwell*, 690 F.3d at 503–15 (declining to overrule *Harris*).

The other post-trial precedent relied upon by the Government is *United States v. Haile*, 685 F.3d 1211 (11th Cir. 2012). Like the decision in *Burwell*, the opinion in *Haile* was largely dictated by adherence to prior circuit precedent, *United States v. Ciszkowski*, 492 F. 3d 1264 (11th Cir. 2007). Based on the decision in *Ciszkowski*, the Eleventh Circuit declined to find a *mens rea* requirement even though the *Ciszkowski* rationale had been expressly rejected, but not overruled by name, in the Supreme Court decision in *O'Brien*. *See id.* at 1218.

Thus, the two post-trial decisions upon which the Government relies are too late and are of questionable relevance, both factually and legally. This Court declines to follow post-trial precedents from outside the Fourth Circuit that are largely based upon such technical rules when their application, in the face of contrary Supreme Court and Fourth Circuit precedent and fundamental rules of Anglo-American jurisprudence, leads to thirty years being added to a defendant's already substantial sentence.

Accordingly, the Court concludes that a competent attorney rendering reasonable professional assistance, based on adherence to Fourth Circuit and Supreme Court precedent, would, and should, have requested a *mens rea* instruction. It was an error for Trejo Ruiz's counsel not to have done so and an error for this Court to have not given the instruction.

## II.     Trejo Ruiz Satisfies *Strickland's* Prejudice Prong

Trejo Ruiz must also demonstrate prejudice—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Here again, Ruiz has successfully met this prong. The evidence of record, including the expert testimony of Special Agent Earl Griffith of the Bureau of Alcohol, Tobacco, Firearms and Explosives, sufficiently demonstrated that the weapon in this case was, in fact, a machinegun. *See* ECF No. 501, at 131:13–25, 132:1–19. However, the record is devoid of any direct evidence that Trejo Ruiz was aware that the weapon was a machinegun, and the circumstantial evidence is minimal, at best. Forensic evidence showed that the weapon had never been fired, and co-conspirator witness testimony at trial referred to the firearm as a "rifle" or "long weapon." *See, e.g.*, ECF No. 501, at 24:14–15 (trial testimony of co-conspirator Romero Salazar in which she testifies that Trejo Ruiz offered to sell co-conspirator Roca "a rifle"). Co-conspirator Rosales referred to the gun as "semi-automatic," but this is not the same as "automatic," and Rosales' testimony gives no indication of what Trejo Ruiz thought the gun to be. *See* ECF No. 501, at 81:24, 83:1–8.

The only way Trejo Ruiz could have known that the "rifle" was an automatic weapon was if the seller had informed Trejo Ruiz that it was a machinegun or if Trejo Ruiz deduced that it was a machinegun based on the "auto" flip switch bored into the gun. However, it cannot be disputed that the weapon had never been fired by anyone, much less Trejo Ruiz, and there was

11

no evidence that Trejo Ruiz ever saw the "auto" flip switch up-close, or realized that the switch converted the weapon to a machinegun.

Accordingly, a reasonable jury likely would have found Trejo Ruiz not guilty of the § 924 (c) (1) (B) (ii) charge if properly instructed that it must find beyond a reasonable doubt that he knew that the characteristics of the firearm he possessed were that of a machinegun. Indeed, based on the law as the Court now understands it, and the record developed at trial, this Court would have granted a Rule 29 Motion to Dismiss.

Since the outcome of the trial on the machinegun charge would likely have been different, Trejo Ruiz fulfills the burden of demonstrating prejudice under *Strickland*.

## CONCLUSION

This Court concludes that Trejo Ruiz has satisfied both prongs under the *Strickland* test for ineffective assistance of counsel. Moreover, the substantial disparity evident in the levels of culpability and the sentences adjudged between Trejo Ruiz and his co-conspirators demonstrate that a grave miscarriage of justice occurred that is ripe for resolution under § 2255. Accordingly, the Court will, by separate order, grant Trejo Ruiz's Motion to Vacate or Correct Sentence, vacate his conviction and sentence under Count Four and enter an Amended Judgment reducing his sentence by 360 months.

November 25, 2015
/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE